CONSULTING SERVICES AGREEMENT

THIS CONSULTING SERVICES AGREEMENT (this "Agreement") is entered into as of June 1, 2021 (the "Effective Date") by and between Basin Engineering, LLC, an Oklahoma limited liability company (hereinafter "Consultant") and Peachridge Energy Operating, LLC., a Delaware limited company (hereinafter "Peachridge"). Consultant and Peachridge are each sometimes referred to herein as a "Party" and collectively as the "Parties."

WHEREAS, Peachridge desires to retain Consultant from time to time as an independent contractor to provide certain services (the "Services") as described in this Agreement and in Exhibit A attached hereto, which is incorporated into this Agreement, all in accordance with and subject to the terms and conditions of this Agreement; and

WHEREAS, Consultant desires to be so retained by Peachridge as an independent contractor to provide the Services in accordance with and subject to the terms of this Agreement;

NOW THEREFORE, for good and valuable consideration given and received, the receipt and sufficiency of which are hereby acknowledged, the Parties intending to be legally bound, do hereby agree as follows:

1. CONSULTING SERVICES

(a) Independent Contractor Status and Purpose. Peachridge hereby engages Consultant to provide the Services set forth in Exhibit A, and, as evidenced by Consultant's execution of this Agreement, Consultant agrees to be so engaged. The Services may vary in nature from time to time, and a separate Exhibit A shall thereafter supplement or replace the preceding Exhibit, as the case may be, but all Services provided by Consultant shall be subject to this Agreement. Consultant shall perform the Services for Peachridge as an independent contractor and not as an agent, employee, joint venturer, partner, or other position. Consultant shall not have the authority to bind Peachridge in any way. Peachridge may request similar services from other consultants.

(b) Reasonable Best Efforts, Qualifications, Conflicts. Consultant shall diligently and conscientiously devote Consultant's time and reasonable best efforts consistent with the terms of this Agreement, applicable law, and the general performance guidelines established by Peachridge. In the performance of the Services, Consultant shall or cause one or more members of Consultant Group (as defined in Exhibit C attached to this Agreement) to devote necessary and appropriate time, energy, skill and reasonable best efforts to the business and affairs of Peachridge as reasonably necessary to carry out the Services. Consultant represents that Consultant has all permits and licenses necessary to perform the duties of this Agreement, if any are required, and that Consultant is otherwise qualified to perform the Services, and that any licenses or certifications claimed by Consultant or its Representatives (defined below) in connection with soliciting engagement for the Services are actually so held. In the event that Consultant's Representatives claim membership in one or more professional organizations, or claims professional accreditations, which have a code of ethical conduct or other professional standards, Consultant shall ensure that its Representatives adhere to those standards for Peachridge's benefit as regards the Services, and such Representatives shall be responsible to Peachridge in this regard. Consultant is not party to any other agreement, or under any other duty, which will interfere or conflict with Consultant's full compliance with this Agreement. Consultant will not enter into any agreement or undertake any other duty or obligation, whether written or oral, in conflict with the provisions of this Agreement. However, except to the extent that such would result in a breach of this Agreement, Consultant may provide consulting services to other parties similar in nature to the Services.

(c)  No Provision of Facilities and Equipment. Consultant shall provide at Consultant's own expense, Consultant's office or place of business, any necessary equipment (including computers and printers and digital scanning machines), office supplies, materials, appropriate assistance from other persons, and any other services needed for the performance of the Services. Other than as explicitly set forth in the description of the Services, Peachridge shall have no right to control the time, place or method of Consultant's (or its Representatives) or any member of Consultant Group's performance of the Services, Peachridge being chiefly interested in the work product and results derived from the Services. If and when Consultant's Representatives or a member of Consultant Group enters upon Peachridge's office properties, they shall be bound to all of Peachridge's protocols and company policies regarding the use of Peachridge's computers, servers and related digital data access and storage.

2.  TERM AND TERMINATION. This Agreement shall begin on the Effective Date above and shall terminate by the mutual agreement of the parties or upon thirty (30) days written notice by either party. The Parties may mutually agree to extend the term of this Agreement for such additional period(s) as may be agreed upon in writing by the Parties. Upon termination of this Agreement for any reason and at any time, all relationships and duties between Consultant and Peachridge shall be terminated except as otherwise specified in this Agreement. Consultant shall perform all reasonable and necessary tasks to provide for an orderly transition of Consultant's work to Peachridge, or to another consultant designated by Peachridge, upon termination.

3.  COMPENSATION.

(a)  Consulting Payment; Reimbursement of Expenses. In consideration for the Consultant's provision of the Services, Peachridge shall pay to Consultant the agreed upon fee (the "Consulting Fee") for each month during the term of this Agreement that Consultant provides Services hereunder. All invoices submitted to Peachridge are payable upon receipt. Any amounts that remain outstanding after 30 days shall accrue interest at the rate of 0.5% per month or at the maximum rate permitted by Applicable Law, whichever is lower. If Peachridge, in good faith, disputes the amount of any invoice, it shall notify Consultant of such dispute within 30 days of receipt of the invoice and shall pay any undisputed amount of the invoice within said 30-day period. If this Agreement shall be terminated for any reason prior to the expiration of the term of this Agreement, the Consultant shall be entitled to receive a prorated payment of the monthly fee payable to Consultant, based upon the number of days in such month that Consultant provided Services to Client hereunder; provided, however, Consultant will not be entitled to any compensation which would have otherwise been payable hereunder has this Agreement continued beyond the termination date. Upon receipt of invoices, receipts and any other documentation reasonably required by Peachridge, Peachridge agrees to reimburse Consultant for any and all costs and expenses reasonably and necessarily incurred by Consultant in connection Consultant's performance of the Services, including, but not limited to, the reasonable cost of travel, lodging and meals, in all respects consistent with Peachridge's own policies for non-managerial employees.

(b)  Consultant Not Entitled to Peachridge Benefits. Neither Consultant nor its Representatives or any member of Consultant Group (as hereinafter defined), if any, shall be entitled to participate in any insurance or other benefit programs which may be applicable to employees of Peachridge. Peachridge is not providing to Consultant any health insurance, workers' compensation insurance, unemployment insurance, retirement plans, or any other benefits. Peachridge shall not pay Consultant or any of Consultant's Representatives (if any) or any member of Consultant Group for any vacations, sick leave or other leave. As used herein the term "Representatives" means, with respect to a Party, such Party's affiliates, officers, directors, members, managers, associates, partners (whether general or limited), and representatives of the foregoing, whether now or hereafter acting in such capacity for or on behalf of such Party.

4.     TAX LIABILITY. Consultant agrees that Consultant shall be liable for the payment of all federal, state and local taxes which may be owed by Consultant as the result of the consideration received in the Consulting Fee. Consultant understands that Peachridge makes no representations regarding tax treatment of the Consulting Fee, and Consultant agrees fully to defend, indemnify and hold Peachridge, and each of its parents, subsidiaries, divisions, affiliates and operating companies, and the respective officers, directors, employees, agents and affiliates and Representatives of each of them (collectively, the "Peachridge Parties"), harmless from any liability for payment of the taxes, penalties, withholding obligations and interest that Consultant owes on the consideration Consultant receives under this Agreement and that a government agency requests that Peachridge pay (other than any payroll tax amounts for which only the employer would be liable), and to cooperate with Peachridge with respect to any tax issues related to the compensation payable under this Agreement.

5.     CONFIDENTIAL INFORMATION.

(a)     Confidential Information. The Parties acknowledge that in performance of the Services, Consultant may be given access to valuable, proprietary, confidential and trade secret information of Peachridge including, without limitation, confidential and proprietary information pertaining to Peachridge's assets, Peachridge's past, current and future business plans, corporate opportunities, operations, acquisition, merger or sale strategies, production, margins, profitability, operation or production procedures or results, partners, partnership or other business arrangements or agreements with third parties, customers, customer sales volumes, customer contracts, books, records and documents, technical information, equipment, services and processes (collectively, "Confidential Information"). The term Confidential Information does not include any information that: (a) is known to Consultant as shown by written records in its possession at the time the information was received from Peachridge; or (b) is available to the public by publication or becomes available to the public by publication through no fault of Consultant; or (c) is disclosed without obligation of non-disclosure to Consultant by a third party who has the right to disclose same; or (d) is required to be disclosed by a final order from a court of competent jurisdiction. All copies, derivatives and extracts of Confidential Information shall constitute Confidential Information. Upon the earlier of notice from Peachridge (which notice shall be deemed delivered concurrently with the express termination of this Agreement under Section 2), or 60 days after the last work performed by Consultant for Peachridge, Consultant shall destroy or delete all copies of Confidential Information it or its Representatives may then have in their possession or control, and shall so certify in writing to Peachridge once completed.

(b)     Non-Disclosure of Peachridge's Confidential Information. In return for Peachridge's promises in this Agreement and access to Peachridge's Confidential Information, and in accordance with Consultant's acknowledgements and promises above, Consultant hereby agrees that Consultant will not, at any time during or after the term of this Agreement, make any disclosure or use of any of Peachridge's Confidential Information, except as Consultant is specifically authorized to do so under this Agreement, for the benefit of, and on behalf of, Peachridge, or unless required pursuant to any applicable law. Consultant acknowledges that this promise of non-disclosure continues indefinitely and specifically does not expire at the end of the term of this Agreement. Consultant shall take all reasonable and necessary steps to ensure that Consultant's Representatives similarly protect Peachridge's Confidential Information. Consultant agrees that all of Consultant's Representatives shall sign and provide to Peachridge a written ratification and adoption of Section 5 of this Agreement prior to receiving access to Peachridge's Confidential Information or beginning the Services, such ratification and adoption be substantially in the form attached hereto as Exhibit B.

(c)     Third Party Information. Consultant acknowledges that in the performance of the Services, Consultant may be given access to, or obtain knowledge of, confidential business information or trade secrets of third parties, such as customers, clients, vendors, suppliers, partners, joint venturers, and the like, of Peachridge. Consultant agrees to preserve and protect the confidentiality of such third-party confidential

3

information and trade secrets to the same extent, and on the same basis, as the Confidential Information. These third parties shall be intended beneficiaries of this Agreement as to the matters covered by this Section 5(c).

(d)     Return of Peachridge Property. All written or electronic or other data or materials, records and other documents of Peachridge made by, or coming into the possession of, Consultant during the term of this Agreement, including but not limited to, those which contain or disclose Confidential Information, shall be and remain the property of Peachridge. Upon request, and in any event without request upon termination of this Agreement, for any reason, Consultant promptly shall deliver the same, and all copies, derivatives and extracts thereof, to Peachridge. Furthermore, Consultant agrees to return to Peachridge all keys, credit cards, cell phones, tablets, computers and any other Peachridge property in Consultant's possession or control at the end of the term of this Agreement.

(e)     Non-Circumvention. Consultant further agrees that during the term of this Agreement and for a period of one year thereafter (the "Restricted Period"), the Consultant will not acquire or permit any of its Representatives to acquire, in any manner, directly or indirectly, any mineral, surface, leasehold, acreage, oil and/or gas ownership or other interest (collectively "Oil and Gas Interest") in, to or under any lands, oil and gas leases or other oil and/or gas ownership or other interests (including without limitation, interests in surface, minerals, leasehold, royalty, overriding royalty and/or net profits) owned by or purported to be owned by Peachridge as of or after the Effective Date (the "Peachridge Assets"). If the Consultant or any of its Representative do acquire any Oil and Gas Interest in the Peachridge Assets within the Restricted Period in violation of this Section 5(e), then Consultant shall give written notice of such acquisition to Consultant within fifteen (15) business days of such acquisition, which notice shall include a complete description of the Oil and Gas Interests acquired, the purchase price or other consideration, copies of any instrument or instruments conveying (or agreeing to convey) such Oil and Gas Interest, and copies of any other documentation relating to the Oil and Gas Interest acquired. Peachridge shall have thirty (30) days from receipt of such notice to notify Consultant in writing of its election to acquire such Oil and Gas Interest at no cost, risk or expense to Peachridge. If Peachridge fails to timely notify and reimburse Consultant or its Representative such actual costs, then such Oil and Gas Interest shall be deemed not subject to this Agreement. If Peachridge timely elects to acquire such Oil and Gas Interest Consultant shall or shall cause its Representative to promptly assign such interest to Peachridge.

(f)     Non-Disparagement. During the term of this Agreement and at all times thereafter, neither Party will, and will take commercially reasonable steps to ensure that its Representatives will not, make disparaging, false or uncomplimentary remarks about the other Party or its Representatives or testify as an expert witness in matters related to the other Party's business for an adverse party to such other Party in litigation; provided, that nothing contained herein shall interfere with such Party's duty to testify as a witness if required by law.

(g)     Remedies. Consultant acknowledges that money damages will not be sufficient remedy for any breach of this Section 5 by Consultant, and Peachridge shall be entitled to enforce the provisions of this Section 5 by specific performance and/or injunctive relief (without the need for posting a bond) as remedies for such breach or any threatened breach. Such remedies shall not be deemed the exclusive remedies for a breach of this Section 5, but shall be in addition to all remedies available at law or in equity to Peachridge, including, without limitation, the recovery of damages from Consultant and Consultant's Representatives involved in such breach. In the event of a breach of this Agreement, the prevailing party shall be awarded its reasonable attorney's fees and other costs of litigation.

6. INDEMNIFICATION. For Services performed at a location other than at an Peachridge field worksite location, Consultant shall indemnify, defend and hold harmless Peachridge and the Peachridge Parties from and against any and all claims, causes of action, losses, costs, injuries or deaths, liabilities, damages and any and all other expenses, including without limitation, reasonable attorney's fees (collectively, "Claims"), incurred by or arising from the acts, errors or omissions of Consultant or any of Consultant's Representatives or any member of Consultant Group in the performance of the Services or resulting from Consultant's breach of this Agreement, including Claims made by any of Consultant's Representatives or any member of Consultant Group against Peachridge (*INCLUDING THOSE CLAIMS BASED UPON PEACHRIDGE'S ALLEGED NEGLIGENCE, BUT EXCLUDING ANY CLAIMS RESULTING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY MEMBER OF PEACHRIDGE GROUP*). For Services performed at a location other than at an Peachridge field worksite location, Peachridge shall indemnify, defend and hold harmless Consultant Group from and against any and all Claims incurred by or arising from the acts, errors or omissions of Peachridge, any of Peachridge's Representatives or any member of Peachridge Group (as defined in Exhibit C attached to this Agreement) in connection with the performance of the Services by Consultant or resulting from Peachridge's breach of this Agreement, including any Claims made by any of Peachridge's Representatives or a member of Peachridge Group against Consultant or Consultant Group (*INCLUDING THOSE CLAIMS BASED UPON CONSULTANT OR CONSULTANT GROUP'S ALLEGED NEGLIGENCE, BUT EXCLUDING ANY CLAIMS RESULTING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY MEMBER OF CONSULTANT GROUP*). The indemnification obligations set forth in this Agreement shall continue through the term of this Agreement, and shall continue subsequent to the termination or expiration of this Agreement for actions arising from events occurring during the term of this Agreement. Consultant further agrees to indemnify, defend and hold harmless Peachridge and the Peachridge Parties from and against any and all Claims attributable to personal injury or death, or damage to or destruction of property, which arise out of the Consultant's or it Representatives' use or possession of any Peachridge or Peachridge Group property, except to the extent of the gross negligence or willful misconduct of Peachridge or Peachridge Group. Peachridge agrees to indemnify, defend and hold harmless Consultant and Consultant Group from and against any and all Claims attributable to personal injury or death, or damage to or destruction of property, which arise out of Peachridge or Peachridge Group's use or possession of any Consultant or Consultant Group property, except to the extent of the gross negligence or willful misconduct of Consultant or Consultant Group.

For Services performed at a Peachridge field worksite location (*e.g.* a well drilling or production location), the foregoing paragraph and Section 7 shall not apply (though all other terms and provisions contained in this Agreement shall apply). For all Services performed at a Peachridge field worksite location, the terms and provisions of Exhibit "C" attached to this Agreement shall apply in all respects, and said Exhibit "C" is incorporated herein for that purpose.

7. INSURANCE. Consultant agrees to maintain

(a) Professional liability (i.e. "Errors and Omissions") insurance in a coverage limit of not less than $2,000,000.

(b) Workers' Compensation Insurance complying with applicable state laws and Employers' Liability Insurance in the amount of $1,000,000 covering each party's own employees working under this Agreement, if applicable.

(c) Commercial (or Comprehensive) General Liability Insurance, including contractual obligations covered in this Agreement and proper coverage for all

other obligations assumed in this Agreement, in the amount of $1,000,000 combined single limit per occurrence for Bodily Injury and Property Damage.

(d) Automobile Liability Insurance with Bodily Injury in the amount of $1,000,000 for each person and $1,000,000 for each accident; and Property Damage in the amount of $1,000,000 for each accident or $1,000,000 combined single limit for Bodily Injury and Property Damage.

(e) Excess Liability Insurance over that required herein in the amount of $5,000,000, specifically including contractual liability.

Consultant's policy under (c), (d) and (e) shall be endorsed to name Peachridge as an additional insured and waive subrogation against Peachridge, and shall be primary to any insurance carried by Peachridge. All deductibles or retentions under Consultant's policies shall be solely for Consultant's account. Consultant must provide a certificate of insurance evidencing the required insurance coverages hereunder to Peachridge prior to beginning the Services, which certificate must reflect that such coverage cannot be terminated or materially modified without notice to Peachridge. Upon request, Consultant shall provide copies of the required insurance policies to Peachridge.

8. OWNERSHIP OF INTELLECTUAL PROPERTY. Consultant shall promptly disclose to Peachridge all ideas, inventions, computer programs, and discoveries, whether or not patentable or copyrightable, which Consultant may conceive or make, alone or with others, during the term of this Agreement and which directly or indirectly: (i) relate to matters within the scope, field or duties of Consultant's obligations under this Agreement and/or the performance or provision of the Services; (ii) are based on any knowledge of the actual or anticipated business or interest of Peachridge; or (iii) are aided by the use of time, materials, facilities or information of Peachridge. Contractor assigns to Peachridge without further compensation, any and all rights, titles and interest in all such ideas, inventions, computer programs and discoveries in all countries of the world. Consultant recognizes that some or all ideas, inventions, computer programs and discoveries of the type described above, conceived or made by Consultant alone or with others within six (6) months after termination or expiration of this Agreement, may have been conceived in significant part either while engaged as a consultant of Peachridge or as a direct result of knowledge Consultant had of proprietary information including, but not limited to, Confidential Information. Accordingly, Consultant agrees, upon request by Peachridge, to reasonably demonstrate that any such ideas, inventions or discoveries were or were not conceived during Consultant's engagement with Peachridge under this Agreement. Furthermore, any and all writing, computer software, inventions, improvements, processes, procedures and/or techniques which Consultant may make, conceive, discover, or develop, either solely or jointly with any other person or entity, at any time during the term of this Agreement, whether at the request or upon the suggestion of Consultant or otherwise, which relate to the Services, shall be the sole and exclusive property of Peachridge. Consultant agrees to take any and all actions necessary or appropriate so that Peachridge can prepare and present applications for copyright or Letters Patent therefor, and can secure such copyright or Letters Patent wherever possible, as well as reissue renewals, and extensions thereof, and can obtain the record title to such copyright or patents. Consultant shall not be entitled to any additional or special compensation or reimbursement regarding any such writings, computer software, inventions, improvements, processes, procedures and techniques.

9. ASSIGNMENT AND SUBCONTRACTING. Neither Party shall have the right to assign or subcontract any of its rights, duties or obligations under this Agreement without the prior written consent of the other Party, which consent may be withheld, conditioned or delayed in the sole and absolute discretion of such other Party; provided, however, that notwithstanding the foregoing provisions of this

6

Section 9 to the contrary, Peachridge may assign its rights, duties and obligations under this Agreement to any of its respective subsidiaries or affiliates and to any successor in the event of a sale, merger or other transaction affecting any of Peachridge's operations relating to this Agreement.

10. GOVERNING LAW; VENUE. This Agreement shall be governed by and conformed in accordance with the laws of the State of Texas, without regard to its conflict of laws provisions. The venue for any litigation regarding this Agreement or the subject matter hereof shall lie exclusively in the district courts of Harris County, Texas, and the Parties waive any and all objections to such venue and shall submit to the jurisdiction thereof.

11. COUNTERPARTS. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same Agreement. Any Party's delivery of an executed counterpart signature page of this Agreement by facsimile (or e-mail) is as effective as executing and delivering this Agreement in the presence of the other Party.

12. SECTION HEADINGS. Section headings contained in this Agreement are for convenience of reference only and shall not affect the meaning of any provision herein.

13. SEVERABILITY. Should any term or provision of this Agreement be declared illegal, invalid or unenforceable by any court of competent jurisdiction and if such provision cannot be modified to be enforceable, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect. The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.

14. ENTIRE AGREEMENT. This Agreement, including its attached Exhibits, sets forth the entire agreement between the Parties and fully supersedes any and all prior and/or supplemental understandings, whether written or oral, between the Parties concerning the subject matter of this Agreement. Any amendment or modification to this Agreement must be in writing and signed by Consultant and an authorized manager of Peachridge.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the Parties executed this Agreement as of the Effective Date.

PEACHRIDGE:

PEACHRIDGE ENERGY OPERATING, LLC

By: _____

Printed Name: Shannon Richard
Title: President & CEO

CONSULTANT:

BASIN ENGINEERING, LLC

By: _____

Printed Name: Craig Northcutt

Title: President

EXHIBIT A
TO
CONSULTING SERVICES AGREEMENT

DESCRIPTION OF SERVICES

EXHIBIT B
LIMITED RATIFICATION AND ADOPTION OF AGREEMENT
BY CONSULTANT'S REPRESENTATIVES

I, the undersigned, am familiar with the Consulting Services Agreement dated _____, between Basin Engineering, LLC, as Consultant, and Peachridge Energy Operating, LLC, and do hereby adopt and ratify the provisions of Section 5 as a Representative of Consultant (but not otherwise).

_____

Printed name:

EXHIBIT C
Indemnification Provisions for Field Worksite Risks

The following definitions shall apply to this Exhibit "C":

(a) "Claim(s)" means all claims, demands, damages, losses, liabilities (including contractual liabilities), liens, encumbrances, government imposed fines and/or penalties, suits, causes of action of any kind or character (including those for property damage, environmental damage or contamination, personal injury, disease or death), obligations, costs, judgments and awards, whether under judicial proceedings, administrative proceedings or otherwise (including those requiring the payment of interest, reasonable attorneys' fees, and/or other costs of litigation), arising out of, or in any way relating to this Agreement or the Services.

(b) "Consultant Group" means, individually or in any combination, Consultant, its affiliates and their respective owners, members, managers, shareholders, partners, officers, directors, employees, subcontractors, contractors, invitees and other consultants.

(c) "Peachridge Group" means, individually or in any combination, Peachridge, its affiliates, its joint venturers and co-interest owners or other persons with a financial interest in any well or rig, with respect to which Consultant performs Services, its lessors and co-lessees, its contractors and subcontractors of every tier (other than members of Consultant Group), and each of their respective officers, directors, managers, members, shareholders, partners, employees, agents, invitees and representatives.

## RESPONSIBILITY FOR LOSS OR DAMAGE, INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF RISK REGARDLESS OF FAULT

CONSULTANT SHALL RELEASE PEACHRIDGE GROUP FROM ANY LIABILITY FOR, AND SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS PEACHRIDGE GROUP, FROM AND AGAINST, ALL CLAIMS OF EVERY KIND AND CHARACTER IN FAVOR OF OR MADE BY ANY MEMBER OF CONSULTANT GROUP, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE OF ANY PARTY OR PARTIES (INCLUDING A MEMBER OF THE PEACHRIDGE GROUP'S NEGLIGENCE), BUT EXCLUDING CLAIMS RESULTING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY MEMBER OF PEACHRIDGE GROUP, ARISING IN CONNECTION WITH SERVICES PERFORMED UNDER THIS AGREEMENT, ON ACCOUNT OF BODILY INJURY, DEATH, OR DAMAGE TO PROPERTY. CONSULTANT'S INDEMNITY OBLIGATIONS UNDER THIS AGREEMENT SHALL BE WITHOUT REGARD TO FAULT AND WITHOUT ANY RIGHT TO CONTRIBUTION FROM ANY INSURANCE MAINTAINED BY PEACHRIDGE OR ANY MEMBER OF PEACHRIDGE GROUP, EXCEPT TO THE EXTENT OF ANY CLAIMS RESULTING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY MEMBER OF PEACHRIDGE GROUP.

PEACHRIDGE SHALL RELEASE CONSULTANT GROUP FROM ANY LIABILITY FOR, AND SHALL PROTECT, DEFEND, INDEMNIFY AND HOLD HARMLESS CONSULTANT GROUP, FROM AND AGAINST, ALL CLAIMS OF EVERY KIND AND CHARACTER IN FAVOR OF OR MADE BY ANY MEMBER OF PEACHRIDGE GROUP, WITHOUT LIMIT AND WITHOUT REGARD TO THE CAUSE OR CAUSES THEREOF OR THE NEGLIGENCE OF ANY PARTY OR PARTIES (INCLUDING CONSULTANT GROUP'S OWN NEGLIGENCE), BUT EXCLUDING CLAIMS RESULTING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY MEMBER OF CONSULTANT GROUP, ARISING IN CONNECTION WITH THE SERVICES PERFORMED

UNDER THIS AGREEMENT, ON ACCOUNT OF BODILY INJURY, DEATH OR DAMAGE TO PROPERTY. PEACHRIDGE'S INDEMNITY OBLIGATIONS UNDER THIS AGREEMENT SHALL BE WITHOUT REGARD TO FAULT AND WITHOUT ANY RIGHT TO CONTRIBUTION FROM ANY INSURANCE MAINTAINED BY CONSULTANT OR ANY MEMBER OF CONSULTANT GROUP, EXCEPT TO THE EXTENT OF ANY CLAIMS RESULTING FROM THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF ANY MEMBER OF CONSULTANT GROUP.

To support the indemnification provisions in this Exhibit "C", but as a separate and independent obligation, each Party shall at each Party's own expense maintain, with an insurance company or companies authorized to do business in the state where the Services are to be performed, insurance coverages of the kind and in the amounts as follows:

> (a) Workers' Compensation Insurance complying with applicable state laws and Employers' Liability Insurance in the amount of $1,000,000 covering each party's own employees working under this Agreement, if applicable.
>
> (b) Commercial (or Comprehensive) General Liability Insurance, including contractual obligations covered in this Agreement and proper coverage for all other obligations assumed in this Agreement, in the amount of $1,000,000 combined single limit per occurrence for Bodily Injury and Property Damage.
>
> (c) Automobile Liability Insurance with Bodily Injury in the amount of $1,000,000 for each person and $1,000,000 for each accident; and Property Damage in the amount of $1,000,000 for each accident or $1,000,000 combined single limit for Bodily Injury and Property Damage.
>
> (d) Excess Liability Insurance over that required herein in the amount of $5,000,000, specifically including contractual liability.
>
> (e) *As to Consultant only*, Professional Liability (*i.e.* "Errors and Omissions") insurance in a coverage limit of not less than $2,000,000.

Each Party shall cause its insurers to name the other Party as an additional insured and waive subrogation against the other Party's Group as to the coverages in subparts (b), (c) and (d) above, but only to the extent of liability assumed in this Agreement. All deductibles shall be for the account of the primary/named insured. Consultant must provide a certificate of insurance evidencing the required insurance coverages hereunder to Peachridge prior to beginning the Services, which certificate must reflect that such coverage cannot be terminated or materially modified without notice to Peachridge. Upon request, Consultant shall provide copies of the required insurance policies to Peachridge.